IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.: 15-cv-80032 Bloom

STRATEGIC MARKETING INC,

      Plaintiffs,

v.

GREAT BLUE HERON SOFTWARE, LLC;
ERNEST L. WALLACE, JR.,
EVENTS, ADVENTURES 'N MORE, INC.,
EVENTS & ADVENTURES OF ATLANTA, LLC.,
EVENTS and ADVENTURES OF NEW YORK, INC.,
EVENTS & ADVENTURES OF PHILADELPHIA, INC.,
EVENTS & ADVENTURES BOSTON, INC.,
YOUR SOCIAL LIFE, LLC.,
RANDY GARDNER,

      Defendants.

_____/

## COURT'S INSTRUCTIONS TO THE JURY

Members of the jury:

It's my duty to instruct you on the rules of law that you must use in deciding this case.

When I have finished, you will go to the jury room and begin your discussions, sometimes called deliberations.

### The Duty to Follow Instructions—Corporate Party Involved

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it—even if you do not agree with the law—and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company.

## Consideration of Direct and Circumstantial Evidence; Argument of Counsel; Comments by the Court

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But, anything the lawyers say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight you may give to either direct or circumstantial evidence.

## Stipulations

Sometimes the parties have agreed that certain facts are true. This agreement is called a stipulation. You must treat these facts as proved for this case.

1.  SMI is a full-service advertising, marketing and public relations company in South Florida.

2.  Wallace Defendants own the domain name "lotsofevents.com," which provides access to the Events & Adventures ("EA") website.

3.  In the past, EA has employed Wallace Defendants to make alterations to the design and code of its website.

4.  On January 26, 2006, SMI entered into an agreement with Gardner and EA wherein SMI was retained as the exclusive marketing agency for all EA locations owned and/or licensed by Gardner.  The agreement was amended by a Supplement Letter to Agreement on January 24, 2008.

5.  Pursuant to the agreements discussed above, SMI provided creative production services for Gardner and EA, including the creation of certain designs, as well as media buying and lead generation.

6.  Moreover, according to the Agreements discussed above, SMI is entitled to receive $3,500.00 per month, as a media retainer, per market/franchise owned, co-owned, or licensed by Gardner, in exchange for the right to use SMI's intellectual property.   This means SMI suffered a loss of $494,000.00, in lost revenue from April 2014 through November 2015.

7.  The Wallace Defendants/Counter-Plaintiffs are not a party to said Agreements between SMI and Gardner and EA.

8.  On April 19, 2013, Terry Murphy, the principal of SMI ("Murphy") sent Gardner a 2D- Design proposed modification for EA's website (the "SMI design"), which Gardner then forwarded to Wallace via e-mail.

9.  During a meeting between Wallace and Gardner, Wallace agreed that EA should transition away from its previous website design, in favor of a different design.

3

10. Over the course of 20 days, certain changes were made to the SMI design, and on May 10, 2013, a final version was transferred to Wallace by way of the program "YouSendIt" to apply code so as to make the new website active.

11. Wallace was tasked with creating a modified website, which he worked on during the month of May 2013.

12. From May to November, 2013, both SMI and Wallace were employed by and/or working with EA.

13. After the SMI-EA relationship ended, Wallace shared a link to the final design with individuals who continued to work on a re-design of the EA website.

14. SMI did not acquire a license or receive written authorization from the Wallace Defendants to use the website owned by the Wallace Defendants for commercial purposes.

15. SMI filed a copyright application with the United States Copyright Office, and was issued Registration No.: VAu-1-176-703, with an effective date of April 1, 2014, protecting the text and 2D-Artwork in the work titled: "Events and Adventures Website Redesign."

16. SMI claims protection in the overall creative expression of the design, including the selection, arrangement, and placement of colors, 2D artwork, fonts, words and images.

17. After SMI was granted copyright protection over the design, EA launched a new version of its website, which SMI claims infringes on its copyright.

18. SMI also owns a copyright entitled "Your Social Life," Registration No. TXu 1-905-670A, which SMI claims Gardner and YSL separately infringed upon.

19. In connection with its business relationship with the EA locations, GBHS received 1.5% of the gross revenue generated through sales of the membership to the following Events & Adventures locations: Atlanta, Boston, Tampa, St. Louis, Washington DC, Long Island, Manhattan, South Florida, Philadelphia, and Nashville.  In addition, Wallace through Great Blue Heron Management, LLC, owned fifty percent of the interest in EA of Atlanta, LLC through December 31, 2013.

20. SMI was requested to provide the PSD files for Wallace to start coding the website directly using the design. Wallace requested from SMI and received the PSD files with images, text/font files of the design work. Wallace had access to the Photoshop, PSE files of the design created by SMI.

21. The Defendants in this case agree that the infringing website and SMI's design work are similar. The Defendants also agree that the designs are similar because SMI's work is derivative in nature from the pre-existing website authored by the Wallace Defendants.

22. On February 22, 2014, Murphy was informed by Wallace, through a phone call, that Wallace was in the process of changing the design of the website and that Wallace planned to use the design created by SMI. During the call, Murphy warned Wallace that he could not use SMI's design as that was SMI's work, it was intellectual property of SMI, and Wallace was not authorized to use it. In fact, Murphy explained that once SMI was terminated, the EA locations subject to the agreement lost the right to use the design.

23. Wallace proceeded to use the design.

24. The Gardner entities were generating revenue through the lotsofevents.com website and through leads from Salesforce, generated from Mark Owen.

25. Once a membership is purchased, EA categorizes the monies paid down in connection with the membership within the revenue column, and the monies that are to be collected on receivables on the "fee" column, which is thereafter paid by members on monthly basis over a period of time.

26. A membership buys a member of an EA location access to a calendar on the lotsofevents.com website. The calendar provides members with dates and locations of activities for singles that members can attend and be introduced to other people.

27. Overall, the EA locations owned by Gardner generated a total of $896,525.65 (sum of gross revenue for each entity), in gross revenue in 2014 from the use of the website lotsofevents.com.

28. Overall, the Events & Adventures locations owned by Emmett Avery generated a total of $1,155,636.51 (sum of gross revenue, before expenses and taxes for each

entity), in gross revenue, before expenses and taxes, in 2014 from the use of the website lotsofevents.com.

29. Gardner consented that he stopped utilizing the yoursociallife.com website because of the filing of this action.

## Credibility of Witnesses

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

- Did the witness impress you as one who was telling the truth?
- Did the witness have any particular reason not to tell the truth?
- Did the witness have a personal interest in the outcome of the case?
- Did the witness seem to have a good memory?
- Did the witness have the opportunity and ability to accurately observe the things he or she testified about?
- Did the witness appear to understand the questions clearly and answer them directly?
- Did the witness's testimony differ from other testimony or other evidence?

## Impeachment of Witnesses Because of Inconsistent Statements

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent

6

lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

## Expert Witness

When scientific, technical or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter.

But that doesn't mean you must accept the witness's opinion. As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion.

## Responsibility for Proof—Plaintiff's Claims, Defendants' Affirmative Defenses— Preponderance of the Evidence

In this case, Plaintiff STRATEGIC MARKETING INC (SMI) brings the following claims:

1. Copyright Infringement against EARNEST L.WALLACE, JR. (WALLACE), GREAT BLUE HERON SOFTWARE, LLC (GBHS), RANDY GARDNER (GARDNER), EVENTS, ADVENTURES 'N MORE (EA), and YOUR SOCIAL LIFE, LLC (YSL)
2. Contributory Copyright Infringement against WALLACE
3. Vicarious Copyright Infringement against EA and GARDNER;

The Court instructs you that it has already determined, as a matter of law, that YSL is liable for Copyright Infringement and that EA is liable for Vicarious Copyright Infringement. As to these Defendants, you are to determine damages owed to the Plaintiff, if any, as a result of YSL's Copyright Infringement and EA's Vicarious Copyright Infringement.

It is the responsibility of SMI to prove every essential part of its claims by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion." Similarly, it is the responsibility of GBHS and WALLACE to prove every essential part of their affirmative defenses by a "preponderance of the evidence."

A preponderance of the evidence simply means an amount of evidence that is enough to persuade you that SMI's claims are more likely true than not true.

If the proof fails to establish any essential part of SMI's claims by a preponderance of the evidence, you should find for the Defendants as to that specific claim. If SMI proves each essential part of its claims by a preponderance of the evidence, you shall consider the affirmative defenses raised by GBHS and WALLACE.

If the proof fails to establish any essential part of the affirmative defenses raised by GBHS and WALLACE, you should find against GBHS and WALLACE in connection with their affirmative defenses.

When more than one claim or affirmative defense is involved, as it is in this case, you should consider each claim or affirmative defense separately.

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

### Responsibility for Proof—Affirmative Defenses - Preponderance of the Evidence

In this case, GBHS and WALLACE assert the affirmative defenses of Unclean Hands and Equitable Estoppel; Even if SMI proves its claims by a preponderance of the evidence, GBHS and WALLACE can prevail in this case if they prove an affirmative defense by a preponderance of the evidence.

You should consider each affirmative defense separately.

I caution you that the GBHS and/or WALLACE do not have to disprove SMI's claims, but if GBHS and WALLACE raise an affirmative defense, the only way they can prevail on that specific defense is if they prove that defense by a preponderance of the evidence.

### COPYRIGHT

### Copyright—Validity—General Charge

To establish copyright infringement, SMI must prove two things:

First, that SMI owned a valid copyright.

And second, that GBHS and/or WALLACE and/or GARDNER copied the work's original components.

I'll begin with instructions on validity and then explain ownership and infringement. After that I'll explain the defenses and remedies.

### Copyright—Validity—Originality

To qualify for copyright protection, the claimed work must be original to the author. "Original" means only that the author independently created the work— the author did not copy it from other works—and it possesses at least a minimal degree of creativity.

The originality requirement is a low bar. The requirement that the work possess some creative spark, no matter how crude, humble or obvious. Thus, the requisite level of creativity is extremely low; even a slight amount will suffice.

A work may be copyrightable even though it is entirely a compilation of unprotectible elements. For example, a telephone directory may be copyrightable if its listings are selected, coordinated or arranged in an original fashion.  A photograph of another artwork, so long as it involved minimal creativity in the "selection of lighting, shading, timing, angle, and film" is sufficiently original for copyright protection.   A combination of non-protectable common geometric shapes and other common features may be sufficiently original to be appropriate for copyright protection. Copyright therefore protects the original way in which the author has "selected, coordinated, and arranged" the elements of his or her work.

### Copyright—Validity—Effect of Registration

For original works created after 1977, the work is automatically copyrighted at the moment of creation— even if the work is never registered with the United States Copyright Office. But generally, no suit for copyright infringement can be brought if the copyright has not been registered.

A certificate of registration made within five years after the first publication of the claimed work is evidence of the copyright's validity and the facts stated in the certificate. Specifically, the copyright registration creates a rebuttable presumption of validity. This means that the presumption shifts SMI's burden of proving validity to GBHS, WALLACE and GARDNER, to prove that the claimed copyright is invalid.

In this case, GBHS and WALLACE claim that SMI copied certain prior designs. In that regard, Defendants GBHS and WALLACE are required to prove 1) access and 2)substantial similarity in connection with the designs they alleged were copied.

## Copyright—Validity—Compilations and Collective Works

STRATEGIC MARKETING INC claims that its work is a compilation and that its selection, arrangement, and coordination of preexisting materials, rather than the materials themselves, are protectable.

The selection, arrangement, and coordination of preexisting materials or data in a compilation or collective work does not possess the required degree of creativity for copyright protection if that arrangement or coordination of pre-existing materials is typical, commonplace, or expected as a matter of course. The underlying component parts of a creation are not subject to protection, byt a creator's independent selection and arrangement of component parts into an original design is copyrightable.

For example, the arrangement of last names in a telephone directory in alphabetical order isn't creative. Similarly, the arrangement of a business telephone directory in an alphabetized list of business types, with individual businesses listed in alphabetical order under the applicable headings, is not original.

## Copyright—Validity—Ideas and Expression

Copyright protection does not extend to all the elements of a copyrighted work. Elements covered by the copyright protection are called "protected matter," and non-covered elements are

"unprotected matter." Because unprotected matter isn't entitled to copyright protection, another author may copy it.

There are various types of unprotected matter. They include:

- a portion of the work that isn't original to the author;
- a portion of the work that's in the public domain; and
- an idea, concept, principle, discovery, fact, actual event, process, or method contained in a work

A work that is "in the public domain" is one that does not have copyright protection, so anyone may use all or part of it in another work without charge.

In copyright law, it is important to distinguish between the ideas in a work and the author's expression of the ideas. The ideas in a work are unprotected matter. But an idea must be expressed in some way, and the expression or means of expression of an idea is protected matter.

For example, copyright law doesn't protect the idea of a determined captain hunting a giant whale. But copyright law does protect the particular expression of this idea in the book Moby-Dick.

Put another way, the author of a work has no exclusive right to the underlying ideas, concepts, principles, discoveries, facts, actual events, processes, or methods contained in a work. But the author's copyright does extend to the means by which those are expressed, described, depicted, implemented, or otherwise communicated in the work.

If you find that SMI is seeking copyright protection in:

- a portion of a work that is not original to the author;
- a portion of the work that is in the public domain; or
- an idea, concept, principle, discovery, fact, actual event, process, or method expressed or described in a work, you should exclude that material from the protected matter SMI's copyright infringement claim can be based on.

Therefore, ideas alone are not protectable. But if the expression of an idea is sufficiently creative, that expression is protectable. Expression does not need to be highly creative in order for an author to receive protection in a work.

11

### Copyright—Ownership—General Charge

Now that I have explained validity, we will move to the issue of ownership.

SMI must prove ownership of a copyright in the graphic work titled: "Events and Adventures Website Redesign" and the copyright entitled "Your Social Life" by a preponderance of the evidence. SMI can prove ownership by evidence showing that it:

- is an author or creator of the work and did not transfer to another the exclusive rights being asserted; or
- acquired legal ownership by transfer of the copyright in the exclusive rights GBHS and WALLACE allegedly infringed.

### Copyright—Ownership—Individual Authorship

SMI claims ownership of the copyrighted work "Events and Adventures Website Redesign" as an author of the work—the creator of the original expression in a work that is entitled to copyright protection. SMI also claims ownership of the copyright entitled "Your Social Life."

### Copyright—Ownership—Transfer

A transfer of copyright ownership, other than by operation of law, must be in writing and signed by the owner of the copyright or the owner's authorized agent. The writing may be an instrument of conveyance, such as a contract or assignment, or a note of memorandum of the transfer.

### Copyright—Infringement—Introduction to Elements

If you are persuaded that SMI owns a valid copyright, you must consider whether GBHS, WALLACE and/or GARDNER improperly copied SMI's copyrighted material.

It is the burden of SMI to show that GBHS and/or WALLACE willfully infringed on its valid copyright registered at No.: VAu-1-176-703, titled: "Events and Adventures Website Redesign" by copying part[s] and/or all of it and including the copied material in the website www.lotsofevents.com, and that GARDNER engaged in vicarious infringement of that

copyright. Similarly, it is the burden of SMI to show that GARDNER willfully infringed on its valid copyright registered at No. TXu 1-905-670A titled: "Your Social Life".

Willfulness under the Copyright Act "means that the defendant 'knows his actions constitute an infringement; the actions need not have been malicious. Willfulness may be actual or constructive and may be proven directly or may be inferred from the defendants' conduct.

This is called "infringement" of a copyright.

To succeed on its infringement claims, SMI must prove that GBHS, WALLACE and/or GARDNER copied the part[s] of SMI's copyrighted work that the law protects.

There are two ways in which SMI can prove a claim of copyright infringement.

First, SMI can show direct evidence that GBHS, WALLACE and/or GARDNER actually copied the copyrighted material. For example, SMI could introduce believable eyewitness testimony or an admission by GBHS, WALLACE and/or GARDNER. Such direct evidence is rare.

Or second, SMI can show indirect or circumstantial evidence that GBHS, WALLACE and/or GARDNER copied its work. For example, indirect evidence of infringement may be proof that GBHS, WALLACE and/or GARDNER, tried to get and/or obtained a copy of SMI's work and then published a design that is substantially similar to SMI's 2D-Design. In general, the two elements of infringement are (1) access and (2) substantial similarity.

Exact reproduction or near identity is not necessary to establish infringement. The existence of differences will not negate infringement unless they so outweigh similarities that the similarities can only be deemed inconsequential within the total context of the copyrighted work.

### Copyright—Infringement—Access

Remember, I described the two general elements of infringement as (1) access and (2) substantial similarity. I'll now discuss access in more detail. SMI can show that GBHS and/or WALLACE (as to No.: VAu-1-176-703), and/or RANDY GARDNER (as to No. TXu 1-905-670A) had "access" to its work by showing that GBHS, WALLACE and/or GARDNER had a reasonable

opportunity to see the work. It is not necessary to show that GBHS, WALLACE and/or GARDNER actually saw SMI's work before creating the design that is contained within the website www.lotsofevents.com, if the evidence reasonably establishes that GBHS, WALLACE, and/or GARDNER could have seen it and could have copied it. But you cannot base a finding that GBHS, WALLACE and/or GARDNER had access to SMI's work on mere speculation, conjecture, or a guess. To support a finding of access, there must be more than just a slight possibility of access. There must be a reasonable possibility of access.

Sometimes Plaintiffs cannot show that a defendant had access to its work before the defendant created an alleged copy. If that was the case here,   SMI can still establish a rebuttable presumption of copying by showing that the material GBHS, WALLACE and/or GARDNER allegedly copied is so strikingly similar to its copyrighted material that the similarity is unlikely to have occurred unless there was copying. Put another way, if SMI's work at No.: VAu-1-176-703 and GBHS and/or WALLACE 's work are so strikingly similar that a reasonable person would assume GBHS and/or WALLACE copied from SMI's work and that there is no possibility of independent creation, coincidence, or prior common source, then SMI is entitled to a rebuttable presumption that copying occurred. "Strikingly similar" is a greater degree of similarity than "substantially similar."

An accused work is substantially similar to an original piece if an ordinary observer would conclude that the accused work's creator unlawfully took protectable material of substance and value from the original piece.

Even if there is little similarity between the pieces, the accused work can still be substantially similar if the copied parts from the original piece are the important quality.

As to No.: VAu-1-176-703 ("Events and Adventures Website Redesign") a "rebuttable presumption" means that you assume that copying occurred unless GBHS and WALLACE proves that it did not happen. If SMI shows (1) that GBHS and/or WALLACE had access to the copyrighted material and that there is substantial similarity between the two works, or (2) that the works are strikingly similar, then the burden of proof shifts to GBHS and WALLACE to prove that its work is an independent creation—not a copy. Proof that a work is an independent creation overcomes a presumption of copying.

14

As to No.: TXu 1-9050670A ("Your Social Life"), this rebuttable presumption also applies. If SMI shows (1) GARDNER had access to the copyrighted material and that there is substantial similarity between the two works, or (2) that the works are strikingly similar, then the burden of proof shifts to GARDNER to prove that his work is an independent creation—not a copy.

In this case, GBHS and WALLACE claim that SMI copied certain prior designs. In that regard, Defendants GBHS and WALLACE  are required to prove 1) access and 2)substantial similarity in connection with the designs they alleged were copied.


### Copyright—Infringement—Substantial Similarity

Having discussed access, I'll now discuss the issue of substantial similarity. As to No.: VAu-1-176-703, SMI must prove that GBHS and WALLACE's accused work is substantially similar to its copyrightable expression in the copyrighted work. As to No.: TXu 1-9050670A ("Your Social Life"), SMI must prove that GARDNER's accused work is substantially similar to its copyrighted expression in the copyrighted work.

GBHS and/or WALLACE and/or GARDNER's accused work is substantially similar in expression to SMI's if an ordinary observer would conclude that GBHS and/or WALLACE and/or GARDNER unlawfully took SMI's protectable expression by taking material of substance and value. Even if the degree of similarity between SMI's copyrighted work and GBHS and/or WALLACE and/or GARDNER's accused work is small in quantity, you can still find that there is substantial similarity if the copied portions of SMI's copyrighted work are important in quality. But if GBHS and/or WALLACE and/or GARDNER's copying is minimal or trivial, you should not find infringement.


### Copyright—Infringement—Contributory Infringement

In this case, SMI claims that WALLACE is a contributory infringer of No.: VAu-1-176-703. A "contributory infringer" is one who, with knowledge of another's infringing conduct, induces, causes, or materially contributes to the infringing conduct. "Knowledge" means the alleged contributory infringer actually knew, or had reason to know, of the infringement. If you find that

there has been a direct infringement of SMI's copyrighted materials by one defendant, you can also consider whether there has been "contributory infringement" by another defendant.

### Copyright—Infringement—Vicarious Infringement

If you find that there is a direct infringement, you can then consider whether there has also been a vicarious infringement. A "vicarious infringer" is one who profits from a direct infringement while declining to exercise his right and ability to stop or limit the infringement.

Under this doctrine a party is responsible for the direct infringer's acts if the party controlled or supervised, or had the right and ability to control or supervise, the direct infringer's actions.

If you find that there has been a direct infringement of SMI's copyrighted materials by one defendant, you can consider whether there has been "vicarious infringement" by another defendant.

To find that GARDNER is liable for another party's infringement of No.: VAu-1-176-703, you must first find that GARDNER had the right and ability to control or supervise the other party's infringing action and either controlled the action, or failed to exercise his right and ability to prevent the infringement. Also, you must find that GARDNER directly profited from the other's infringement.

### Affirmative Defense – Unclean Hands

As an affirmative defense, GBHS and WALLACE asserts that SMI had unclean hands when SMI claimed that its copyrighted design was originally authored work that did not involve copying.

Unclean hands may be found only where the unlicensed user subjectively and knowingly intended to cause mistake or to confuse or deceive. Mere awareness of a copyright owner's claim to the same original authored work does not amount to having unclean hands. The owner of the copyright must demonstrate that at the time the unlicensed user began using the design or

sometime thereafter, said unlicensed user knowingly did so with the bad faith intent to benefit from or capitalize on the owner's goodwill.

To prevail on their claim of unclean hands, GBHS and WALLACE must prove by a preponderance of the evidence that SMI knowingly intended to use the preexisting work as its own.

If you find by a preponderance of the evidence that GBHS and WALLACE established that SMI had unclean hands, you should find in favor of GBHS and WALLACE.

### Affirmative Defense— Equitable Estoppel

GBHS and WALLACE claim that SMI is barred from asserting its copyright infringement claim against GBHS and WALLACE by the doctrine of estoppel. To establish estoppel, GBHS and WALLACE must prove each of the following elements by a preponderance of the evidence:

First,  that SMI knew the facts of GBHS's and WALLACE's infringing conduct.

Second, that SMI's statement or conduct (either action or inaction) caused GBHS and WALLACE to believe that SMI wouldn't pursue a claim for copyright infringement against them.

Third, that SMI intended for GBHS and WALLACE to act on their statement or conduct, or GBHS and WALLACE had a right to believe SMI so intended.

Fourth, that GBHS and WALLACE didn't know that SMI would pursue a claim for copyright infringement against them.

And fifth, that GBHS and WALLACE were injured as a result of their reliance on SMI's statement or conduct.

If you find that GBHS and WALLACE have proved these elements by a preponderance of the evidence, your verdict must be in favor of  GBHS and WALLACE on the claim for copyright infringement.

### Copyright—Damages—General Charge

17

If you find that SMI proved by a preponderance of evidence that GBHS and/or WALLACE infringed SMI's copyright titled "Events and Adventures Website Redesign", that WALLACE is liable for contributory copyright infringement and GBHS and WALLACE have not proved an affirmative defense, you must determine whether SMI is entitled to recover damages. If you find in favor of SMI as to GARDNER on the claim that he infringed SMI's copyright titled "Your Social Life" and vicarious infringement as to GARDNER, you will consider damages as to GARDNER. The Court has already instructed you that Defendants YSL and EA are each liable for infringement and you must consider damages as to YSL and EA.

In the next instruction, I will define how you must determine the amount of damages, if any, to award to SMI.

**Copyright—Damages—Actual Damages**

SMI is entitled to recover any actual damages suffered because of the infringement.

"Actual damages" means the amount of money adequate to compensate SMI for the injury to the market value of the copyrighted work caused by the infringement. In this case, SMI claims that the injury to the market value of its copyrighted work is measured by:

- licensing revenue lost because of the infringement;
- profits on sales lost because of the infringement;
- the profits GBHS, WALLACE and/or GARDNER earned because of the infringement;
- the revenues that SMI lost because of the infringement; or
- other measure specific to the case.

SMI has the burden of first proving to a reasonable probability a causal connection between GBHS, WALLACE and RANDY GARDNER's alleged act(s) of infringement and any injury to the market value of the copyrighted work at the time of infringement.

Such a claim for actual damages may include a retroactive license fee measured by what the Plaintiff would have earned by licensing the infringing use to the Defendant.

**Copyright—Damages—Statutory Damages**

SMI seeks a statutory damage award against GARDNER and YSL based on the infringement of the copyright entitled "Your Social Life." "Statutory damages" are damages that are established by Congress in the Copyright Act.

The purposes are to compensate the copyright owner, penalize the infringer, and deter future copyright-law violations. The amount awarded must be between $750 and $30,000 for each copyrighted work that you found to be infringed, unless one of the exceptions applies, as I'll explain later.

To determine the appropriate amount to award, you can consider the following factors:

- the profits YSL and/or GARDNER earned because of the infringement;
- the revenues that SMI lost because of the infringement;
- the difficulty of proving SMI's actual damages;
- the circumstances of the infringement;
- whether YSL and/or GARDNER intentionally infringed SMI's copyright; and
- deterrence of future infringement.

If SMI proves that YSL and/or GARDNER willfully infringed its copyright, you may—but are not required to—increase the statutory damage award to a sum as high as $150,000 per copyrighted work.

Infringement is "willful" if SMI proves that YSL and/or GARDNER knew that its/his actions constituted infringement of SMI's copyright.

If YSL and/or GARDNER prove that innocent infringement of SMI's copyright, you may—but are not required to—reduce the statutory damage award to a sum as low as $200 per copyrighted work. Infringement is "innocent" if YSL and/or GARDNER prove, individually, that he and it did not know, and had no reason to know, the acts at issue constituted infringement.

You can not find that YLS and/or GARDNER was and/or were, innocent infringer(s) if a notice of copyright appeared in the correct form and position on the published copy of SMI's work to which GBHS, WALLACE, and/or GARDNER had access.

A notice is in correct form if it includes the symbol © (the letter C in a circle)/the word "Copyright"/the abbreviation "Copr.", the name of the copyright owner/an abbreviation by

19

which the copyright owner's name can be recognized/a generally known designation of the copyright's owner and if no other name appears in conjunction with the notice, the producer's name must be considered part of the notice, and the year of first publication of the work. A notice is in the correct position if it appears in a manner and location that gives reasonable notice of the claim of copyright.

### Duty to Deliberate When Only the Plaintiff Claims Damages

Of course, the fact that I have given you instructions concerning the issue of SMI's damages should not be interpreted in any way as an indication that I believe that SMI should, or should not, prevail in this case.

Your verdict must be unanimous—in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges— judges of the facts. Your only interest is to seek the truth from the evidence in the case.

### Multiple Claims & Parties

In your deliberations, you are to consider distinct claims alleged by SMI against GBHS, WALLACE, GARDNER, YSL and EA.  You are also to consider SMI's claims for damages. Although these claims have been tried together, each is separate from the other, and the parties are entitled to have you separately consider each claim as it affects that party.   Therefore, in your deliberations, you should consider the evidence as it relates to each claim separately, as you would had each claim been tried before you separately. Also, the existence of multiple defendants here should not affect

20

you evaluation of Plaintiffs' claims – each defendant's conduct must be adjudged independent from that of the other. However, if you award damages, the plaintiffs should be made whole for their injuries, not enriched.  As such, Plaintiffs may not be awarded more than the total of their collective losses arising from the alleged incident discussed at trial.

## Note-Taking

You've been permitted to take notes during the trial. Most of you – perhaps all of you – have taken advantage of that opportunity.

You must use your notes only as a memory aid during deliberations. You must not give your notes priority over your independent recollection of the evidence. And you must not allow yourself to be unduly influenced by the notes of other jurors.

I emphasize that notes are not entitled to any greater weight than your memories or impressions about the testimony.

## Election of Foreperson; Explanation of Verdict Form

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

[Explain verdict form]

Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you'll return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me, and I'll respond as promptly as possible – either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or the other at that time. That type of information

21

should remain in the jury room and not be shared with anyone, including me, in your note or question.

You may now retire to consider your verdict.